# United States District Court
# Northern District of Alabama
# Western Division

03 MAY -7 AM 9: 25

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **Washington Mutual Finance Group,** | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ]    CV-01-BE-2442-W |
| | ] |
| **Sammie Hinton,** | ] |
| | ] |
| Defendant(s). | ] |
| | ] |

ENTERED

MAY - 7 2003

## Memorandum of Opinion

## I.    Introduction.

The plaintiff and plaintiff-intervenors in this action seek an order compelling the defendant, Sammie Hinton, to submit his claims against them to arbitration. Presently before the court is a motion to compel arbitration, filed by plaintiff Washington Mutual Finance Group on April 30, 2002 [Doc. # 14], as well as a motion for summary judgment, filed by plaintiff-intervenors American Bankers Life Insurance Company of Florida, American Security Insurance Company, Union Security Life Insurance Company, American Bankers Life Assurance Company of Florida, and Monumental Life Insurance Company (collectively "Insurance plaintiffs") on May 3, 2002 [Doc. # 17]. The issues raised in the motions have been fully briefed by the parties, and are now ripe for decision. Upon due consideration, Washington Mutual's motion to compel arbitration will be granted, and the Insurance plaintiffs' motion for summary judgment will be granted.



**II.    Facts.**[1]

On April 10, 1998, defendant Sammie Hinton, an Alabama citizen, procured a loan

from City Finance Company, Washington Mutual's predecessor-in-interest.[2] The loan

documents were executed by Mr. Hinton in Columbus, Mississippi. Mr. Hinton, who is

functionally illiterate, informed representatives of City Finance that he was illiterate and

therefore unable to read the loan documents; however, he did not ask anyone to read or

explain any of the documents to him. In conjunction with the issuance of the loan, Mr.

Hinton and a representative of City Finance signed an arbitration agreement, entitled

"ALTERNATIVE DISPUTE RESOLUTION AGREEMENT," which states in pertinent part:

> ALL DISPUTES, CONTROVERSIES OR CLAIMS OF ANY KIND AND NATURE
> BETWEEN LENDER AND BORROWER ARISING OUT OF OR IN
> CONNECTION WITH THE LOAN AGREEMENT, OR ARISING OUT OF ANY
> TRANSACTION OR RELATIONSHIP BETWEEN LENDER AND BORROWER
> OR ARISING OUT OF ANY PRIOR OR FUTURE DEALINGS BETWEEN
> LENDER AND BORROWER, SHALL BE SUBMITTED TO ARBITRATION AND
> SETTLED BY ARBITRATION IN THE STATE OF MISSISSIPPI IN
> ACCORDANCE WITH THE UNITED STATES ARBITRATION ACT, THE
> EXPEDITED PROCEDURES OF THE COMMERCIAL ARBITRATION RULES
> OF THE AMERICAN ARBITRATION ASSOCIATION (THE "ARBITRATION
> RULES OF THE AAA"), AND THIS AGREEMENT. . . .
> . . .
> The parties intend that this Agreement shall encompass and embody the
> broadest range of matters that may be arbitrated under federal law.
> Specifically included within the matters subject to arbitration under this
> Agreement are Borrower's execution of this Agreement and/or Borrower's

---

[1] The facts set out below are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] Washington Mutual is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in the State of Florida.

willingness to be bound by its terms and provisions as well as the validity or
legality of this Agreement under applicable law. The parties further agree that
any question as to the scope of this Agreement shall, to the extent permitted
by law, be determined by the Arbitrator (including, without limitation, issues
of unfairness, capacity, waiver, unconscionability and so forth). . . .
. . .
THIS IS AN IMPORTANT LEGAL DOCUMENT. IF YOU DO NOT
UNDERSTAND IT, DO NOT SIGN IT, AND SEEK LEGAL HELP!

[Doc. # 1, Ex. B (emphasis in original).] Mr. Hinton admits that although he was unable to

read the arbitration agreement, he did not ask anyone from City Finance any questions

about what he was signing. Also in connection with the issuance of his loan, Mr. Hinton

purchased credit insurance from one or more of the Insurance plaintiffs.

On June 1, 2001, Mr. Hinton, along with several other named plaintiffs, filed a lawsuit

against Washington Mutual, the Insurance plaintiffs, and several individual defendants in

the Circuit Court of Sunflower, Mississippi, alleging, *inter alia*, that the defendants "entered

into a civil conspiracy with each other and insurance companies to sell credit life, credit

disability, property, and/or collateral protection insurance to Plaintiffs that was unnecessary

and at an exorbitant premium far in excess of the market rate." [Doc. # 1, Ex. A, ¶ 100.] The

state-court action was timely removed to the United States District Court for the Northern

District of Mississippi, Eastern Division, on a theory of fraudulent joinder. A motion to

remand is currently pending in the removed action.

Washington Mutual filed the instant action on September 28, 2001. [Doc. # 1.] The

Insurance plaintiffs[3] filed motions to intervene as plaintiffs and join in the complaint filed by

---

[3]The various Insurance plaintiffs, for purposes of 28 U.S.C. § 1332, are deemed to be citizens of Delaware,
Florida, Georgia, and Maryland. Because Mr. Hinton is an Alabama citizen, no plaintiff is an Alabama citizen, and
the amount in controversy exceeds $75,000, exclusive of interest and costs, the court has diversity jurisdiction over
this dispute.

Washington Mutual on November 9, 2001, and November 19, 2001 [Doc. ## 5, 8]; those motions were granted on December 7, 2001 [Doc. ## 10, 11]. The sole relief sought by the plaintiff and intervenor-plaintiffs in this action is the entry of an order compelling Mr. Hinton to arbitrate his claims against them. Washington Mutual filed its motion to compel arbitration on April 30, 2002 [Doc. # 14], and the Insurance plaintiffs filed their motion for summary judgment, seeking entry of an order compelling arbitration, on May 3, 2002 [Doc. # 17].

**III.   Standard.**

When a district court reviews a motion for summary judgment under Federal Rules of Civil Procedure 56, it must determine two things: (1) whether any genuine issues of material fact exist; and, if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). To succeed, the moving party bears the burden of establishing both prongs of the summary judgment test. The nonmoving party may defeat the motion for summary judgment by establishing *either* genuine issues of material fact *or* that the movant is not entitled to judgment as a matter of law.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56). The party seeking summary judgment can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of

proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 477 U.S. at 323.

When the moving party has met his burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56 (e)). The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on his pleadings." 477 U.S. at 324. "The plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In responding to a properly-supported motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 , 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Substantive law determines which facts are material and which are irrelevant. *Anderson,* 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." 477 U.S. at 248. Issues of fact are

"'genuine' only if a reasonable jury considering the evidence presented could find for the

nonmoving party." *Anderson*, 477 U.S. at 249. Material facts affect the outcome of the trial

under governing law. 477 U.S. at 248. To determine whether a material fact exists, the court

must consider all the evidence in the light most favorable to the nonmoving party.

*Anderson*, 477 U.S. at 249; *Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir.

2002); *Witter v. Delta Airlines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998).

After both parties have addressed the motion for summary judgment, the court must

grant the motion *if* no genuine issues of material fact exist *and if* the moving part is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In reviewing the evidence submitted,

the court must "view the evidence presented through the prism of the substantive

evidentiary burden," to determine whether the nonmoving party presented sufficient

evidence on which the jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at

254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1998). The court

should not weigh the evidence, or make determinations as to the credibility of witnesses

because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255;

*Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v.

State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Thus, "the evidence of the

nonmovant is to be believed and all justifiable inferences are to be drawn in his favor."

*Anderson*, 477 U.S. at 255. "The nonmovant need not be given the benefit of every inference

but only of every reasonable inference." *Graham*, 193 F.3d at1282 (quoting *Brown v. City

of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.   Discussion.

The Federal Arbitration Act ("FAA") provides that "a written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and unenforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A written agreement to arbitrate future controversies is therefore enforceable as a matter of law if the agreement is voluntarily entered into and appears in a contract evidencing a transaction involving interstate commerce. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281; *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). The Supreme Court has interpreted the phrase "involving commerce" broadly to encompass all transactions affecting commerce, even those in which "the parties did not contemplate an interstate commerce connection." *Dobson*, 513 U.S. at 281. The parties do not dispute that the loan transaction in this case affected interstate commerce; therefore, the court concludes the interstate commerce requirement is met.[4]

Having concluded that the loan transaction affects interstate commerce, and that the FAA therefore applies, the court must ascertain whether the parties entered into a written agreement to arbitrate, and if so, whether the dispute at issue falls within the scope of that agreement. *See Roberson v. The Money Tree of Ala., Inc.*, 954 F. Supp. 1519, 1523 (M.D. Ala. 1997). Following a discussion of the roles of the court and the arbitrator in ascertaining

---

[4]Specifically, the loan proceeds in this case were disbursed to Mr. Hinton in Mississippi from bank accounts in Tennessee and Illinois. The credit insurance sold in connection with the loan was issued by insurers located in other states, and the computer services, loan forms, and the terms of the loan were all provided by Washington Mutual's Florida headquarters.

the arbitrability of a particular dispute, as well as an analysis of the choice of law issues involved, the court will address the motions of Washington Mutual and the Insurance plaintiffs in turn.

## A.   The roles of the court and the arbitrator.

The United States Supreme Court has made clear that the courts, not arbitrators, should ordinarily decide whether or not a particular dispute is arbitrable. *AT&T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986). However, the parties may agree to have the arbitrator determine the arbitrability of a particular substantive dispute, if they "clearly and unmistakably" consent to having the arbitrator decide arbitrability. *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1011 (11th Cir. 1998). In this case, the arbitration agreement contains clear and unmistakable language indicating the parties' intent to have the arbitrator determine issues of arbitrability. [Doc. # 1, Ex. B ("The parties further agree that any question as to the scope of this Agreement shall, to the extent permitted by law, be determined by the Arbitrator.").]

However, while the parties can agree to have the arbitrator decide whether a particular substantive matter is subject to the arbitration agreement, the court still must decide whether, under state law contract principles, the parties agreed to submit issues of arbitrability to the arbitrator. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995); *Scott*, 141 F.3d at 1011. Mr. Hinton argues that the arbitration agreement, which on its face provides that the arbitrator shall decide issues of arbitrability, is not a valid, binding contract. Because the arbitration agreement in this case contains clear language referring the arbitrability of particular matters to the arbitrator, but the defendant alleges that

the agreement is not valid, the court must determine whether Mr. Hinton's signature to the agreement evidences, under state contract law, his binding assent thereto. If the court concludes that the arbitration agreement is valid and enforceable, the court will compel arbitration, and the arbitrator will ultimately decide the arbitrability of the substantive disputes between the parties.

**B.     Choice of law.**

The Supreme Court has held that the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.1, 24 (1983)). However, as stated above, questions concerning the validity of an arbitration agreement are determined with reference to applicable state contract law. *Kaplan*, 514 U.S. at 943-44. Thus, the court must determine which state's contract law applies. A federal district court exercising its diversity jurisdiction must apply the choice of law rules of the state in which it sits, *see Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941); *Tang How v. Edward J. Gerrits, Inc.*, 961 F.2d 174, 179 (11th Cir. 1992); therefore, the court applies Alabama's choice of law rules to determine which state's contract law determines the validity of the arbitration agreement.

Alabama follows the principle of *lex loci contractus*, which provides that questions concerning the validity and interpretation of a contract are governed by the laws of the state where the contract is made, unless the parties have legally contracted with reference to the laws of another state. *Chazen v. Parton*, 739 So. 2d 1104, 1107 (Ala. 1999); *Am. Nonwovens, Inc. v. Non Wovens Eng'g, S.R.L.*, 648 So. 2d 565, 567 (Ala. 1994). In this case, the contract

was made in Mississippi, and no evidence suggests that the parties contracted with reference to the laws of another state. Therefore, the court will apply Mississippi contract law in assessing the validity of the arbitration agreement.

### C.   Washington Mutual's motion to compel arbitration.

Mr. Hinton does not dispute that he and a representative of City Mortgage, Washington Mutual's predecessor-in-interest, signed the arbitration agreement in question, which, on its face, refers all controversies between the parties, including disputes as to whether particular controversies are arbitrable, to an arbitrator for decision. However, Mr. Hinton attacks the validity of the agreement on the following "grounds as exist at law or equity for the revocation of [a] contract," 9 U.S.C. § 2: (1) he was fraudulently induced to sign the arbitration agreement; (2) City Mortgage breached its covenant of good faith and fair dealing; (3) the arbitration agreement is unconscionable; and (4) City Mortgage had unclean hands in its dealings with him. The court will address each of the asserted grounds for revocation of the agreement in turn.

### 1.   Fraud in the inducement.

Mr. Hinton claims he was fraudulently induced to sign the arbitration agreement. Specifically, he alleges that the failure of City Mortgage's representatives to inform him that he was signing an arbitration agreement after he admitted he was illiterate constitutes fraud, making the agreement invalid.

Under Mississippi law, the elements of fraud in the inducement are: (1) a representation, (2) that is false, (3) and material, (4) which the speaker knows is false, (5) made under circumstances in which the speaker intends to induce the hearer into making

a contract, (6) the hearer does not know of the representation's falsity, (7) and the hearer relies on the truth of the representation, (8) and has a right to so rely, (9) and is consequently and proximately injured as a result of that reliance. *Am. Income Life Ins. Co. v. Hollins*, 830 So. 2d 1230, 1239 (Miss. 2002). Viewing the evidence in the light most favorable to Mr. Hinton, no evidence indicates that anyone at City Mortgage made a false representation to him about the contents of the arbitration agreement. Nor did City Mortgage have a duty to inform Mr. Hinton of the contents of the forms he was signing. *See Merchs. & Planters Bank of Raymond v. Williamson*, 691 So. 2d 398, 404 (Miss. 1997) (stating that no fiduciary duties arise in the typical "arms-length business transaction involving a normal debtor-creditor relationship").

Moreover, Mr. Hinton cannot rely on the fact that he is illiterate to fill in the evidentiary gaps in his allegation of fraud. *See Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 726 (Miss. 2002) ("In Mississippi, a person is charged with knowing the contents of any document that he executes."); *Dunn v. Dunn*, 786 So. 2d 1045, 1050 (Miss. 2001) ("The law in Mississippi is clear that 'a person cannot avoid a written contract which he entered into on the ground that he did not read it or have it read to him, and that he supposed the terms were different, unless he was induced not to read it or have it read by fraudulent misrepresentation made to him by the other party on which he was entitled to rely.'") (quoting *McCubbins v. Morgan*, 23 So. 2d 926, 927 (1945)). Because the court finds no evidence that Mr. Hinton was fraudulently induced to sign the arbitration agreement, it concludes that the agreement is not invalid on the basis of fraud.

### 2.    Breach of the covenant of good faith and fair dealing.

Mr. Hinton alleges that City Mortgage breached its duty of good faith and fair dealing in the execution of the arbitration agreement, and that the agreement should be declared invalid as a result of that breach. While "all contracts contain an implied covenant of good faith and fair dealing in *performance* and *enforcement*," *General Motors Acceptance Corp. v. Baymon*, 732 So. 2d 262, 269 (Miss. 1999) (emphasis added), the duty does not apply to "the negotiation of terms leading to the agreement," nor the execution thereof, *Hill v. Galaxy Telecom, L.P.*, 176 F. Supp. 2d 636, 642 (N.D. Miss. 2001). Because City Mortgage could not have breached the implied covenant of good faith and fair dealing in the negotiation or execution of the arbitration agreement, the covenant provides no basis for declaring the contract invalid.

### 3.    Unconscionability.

Mr. Hinton argues that the arbitration agreement is unconscionable and therefore unenforceable. Under Mississippi law, an unconscionable contract is marked by "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998). Indeed, the Mississippi Supreme Court has described an unconscionable contract as "one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other." *In re Will of Johnson*, 351 So. 2d 1339, 1341 (Miss. 1977). One indicator of an unconscionable contract is a lack of voluntariness, which is

> demonstrated in contracts of adhesion when there is a great imbalance in the
> parties' relative bargaining power, the stronger party's terms are
> unnegotiable, and the weaker party is prevented by market factors, timing or
> other pressures from being able to contract with another party on more
> favorable terms or to refrain from contracting at all.

*Entergy*, 726 So. 2d at 1207.

In this case, Mr. Hinton does not allege that, at the time he entered the agreement, he was under such "timing or other pressures" as to have been prevented from "contract[ing] with another party on more favorable terms or . . . refrain[ing] from contracting at all." *Id.* Rather, Mr. Hinton's deposition testimony indicates that no such pressures existed at the time he entered into the agreement in question; he testified that although he "did need the money," he "could have went [sic] somewhere else, but really at the time right then [City Mortgage] offered [the loan] to [him.] So, [he] just went on and signed it." (Hinton Dep. at 42.) Moreover, given clear Mississippi law holding that a contracting party is under a legal obligation to read a contract, or have it read to him, before signing it, *see Dunn*, 786 So. 2d at 1050, Mr. Hinton cannot establish unconscionability merely by alleging his illiteracy. For the foregoing reasons, the court concludes that the arbitration agreement is not unconscionable.

### 4. **Unclean hands.**

Finally, Mr. Hinton raises the defense of unclean hands, alleging that the agreement is invalid because City Mortgage, in its dealings with him, did not act equitably. Aside from the fact that Mr. Hinton has not adduced any evidence to suggest that City Mortgage acted with "wilful inequity," *Lane v. Lane*, No. 2000-CA-01554-COA, 2002 WL 987354, at *3 (Miss. Ct. App. May 14, 2002), Mr. Hinton has not established, nor can the court find any support

for the proposition, that the equitable defense of unclean hands is a "ground[ ] as exist[s] at law or in equity for the *revocation* of any contract," 9 U.S.C. § 2 (emphasis added). Because Mr. Hinton has not established that the arbitration agreement should be revoked as invalid, the court concludes that Mr. Hinton and City Mortgage agreed to submit to arbitration all matters arising out of the agreement between them, including issues of the arbitrability of particular substantive matters. Therefore, Washington Mutual, as City Mortgage's successor-in-interest, is entitled to enforce the arbitration agreement, and its motion to compel arbitration will be granted.

### D.     The Insurance plaintiffs' motion for summary judgment.

Having found no "grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, to invalidate the arbitration agreement, the only remaining question as to the Insurance plaintiffs' motion is whether they, as nonsignatories to the arbitration agreement, can compel Mr. Hinton to arbitrate his claims against them. As an initial matter, the court notes that because the Insurance plaintiffs' motion turns on a question of the enforceability of the arbitration agreement, rather than the interpretation or formation thereof, the federal substantive law of arbitration, and not Mississippi contract law, governs. *See Employers Ins. of Wassau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001).

Under Eleventh Circuit law, "there are certain limited exceptions [to the general rule that only the parties to a contract may enforce it], such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration." *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993). Equitable estoppel allows a nonsignatory

to compel arbitration in two different circumstances. "First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [his] claims' against the nonsignatory." *MS Dealer*, 177 F.3d at 947 (quoting *Sunkist*, 10 F.3d at 757).

The second situation in which equitable estoppel may apply arises when the signatory to the contract containing the arbitration clause raises allegations of "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer*, 177 F.3d at 947 (quoting *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1433 (M.D. Ala. 1997)). In the second situation, the court's failure to allow the nonsignatory to compel arbitration would render the arbitration proceedings between the two signatories "meaningless[,] and the federal policy in favor of arbitration [would be] effectively thwarted." *Id.* (quoting *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976)).

The court is satisfied that the instant case presents the second situation in which equitable estoppel may apply to allow a nonsignatory to an arbitration agreement to compel arbitration of a signatory's claims against it. Specifically, the allegations of Mr. Hinton's complaint in the removed action indicate that his claims against Washington Mutual and the Insurance plaintiffs "are based on the same facts and are inherently inseparable." *Sunkist*, 10 F.3d at 757. Mr. Hinton alleges that Washington Mutual and the Insurance plaintiffs were involved in a civil conspiracy to sell him unnecessary credit insurance in connection with the issuance of his loan. Mr. Hinton's allegations of such "collusive behavior establish[] that [his] claims against [the Insurance plaintiffs are] intimately founded in and intertwined with"

his claims against Washington Mutual arising out of the loan transaction. *Boyd*, 981 F. Supp. at 1433. As such, Mr. Hinton is equitably estopped from avoiding arbitration with the Insurance plaintiffs, and the Insurance plaintiffs' motion for summary judgment will therefore be granted.

## V.   Conclusion.

In sum, both Washington Mutual's motion to compel arbitration and the Insurance plaintiffs' motion for summary judgment will be granted, and Mr. Hinton will be ordered to submit his claims against them to arbitration. The court will enter a separate order in conformity with this memorandum of opinion.

Done, this 6th of May, 2003.

Karon Owen Bowdre
United States District Judge